# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | :   **CRIMINAL NO.  12-230-LDD** |
| **v.** | :   **DATE FILED:   June 13, 2012** |
| **HIGINIO CASTILLO,** | :   **VIOLATIONS:** |
|      a/k/a "Gordo," | :   **21 U.S.C. § 963 (conspiracy to import 1** |
|      a/k/a "Gordito," |    **kilogram or more of heroin – 1 count)** |
|      a/k/a "Little Man," | :   **21 U.S.C. § 952 (importation of 100 grams or** |
|      a/k/a "Piting," |    **more of heroin – 3 counts)** |
|      a/k/a "Donald," | :   **21 U.S.C. §  846 (conspiracy to distribute 1** |
| **MICHAEL NUNEZ-RODRIGUEZ,** |    **kilogram or more of heroin – 1 count)** |
|      a/k/a "Michael Nunez," | :   **21 U.S.C. § 841(a)(1), (b)(1)(A) (possession of** |
|      a/k/a "Mike," |    **100 grams or more of heroin with intent to** |
| **PHILIP OSLEY** |    **distribute – 3 counts)** |
| **YELTSIN GENAO,** | :   **18 U.S.C. § 1201(c) (conspiracy to commit** |
|      a/k/a "Jayson," |    **kidnapping – 1 count)** |
| **KELVIN PEREZ** | :   **18 U.S.C § 1201 (kidnapping – 1 count)** |
| **JULIO GABRIEL PEREZ-MARTINEZ** | :   **18 U.S.C. § 924(c) (using and carrying a** |
| **JOSE EDDY PADILLA-CABAN** |    **firearm during and in relation to a drug** |
| | :   **trafficking crime and crime of violence – 1** |
| |    **count)** |
| | :   **18 U.S.C. § 2 (aiding and abetting)** |

<u>**SUPERSEDING INDICTMENT**</u>

<u>**COUNT ONE**</u>

**THE GRAND JURY CHARGES THAT:**

       1.     From at least November 2010 through March 16, 2012, in Philadelphia, in

the Eastern District of Pennsylvania, and elsewhere, defendants

**HIGINIO CASTILLO,**
**a/k/a "Gordo,"**
**a/k/a "Gordito,"**
**a/k/a "Little Man,"**
**a/k/a "Piting,"**
**a/k/a "Donald,"**
**MICHAEL NUNEZ-RODRIGUEZ,**
**a/k/a "Michael Nunez,"**

**a/k/a "Mike,"**
**PHILIP OSLEY,**
**YELTSIN GENAO,**
**a/k/a "Jayson,"**
**KELVIN PEREZ,**
**JULIO GABRIEL PEREZ-MARTINEZ, and**
**JOSE EDDY PADILLA-CABAN,**

conspired and agreed, together and with others known and unknown to the grand jury, to

knowingly and intentionally import one kilogram or more of a mixture and substance containing a

detectable amount of heroin, a Schedule I controlled substance, into the United States from a place

outside thereof, that is the Dominican Republic, in violation of Title 21, United States Code,

Section 952(a), 960(b)(1)(A).

## MANNER AND MEANS

It was part of the conspiracy that:

2.      Defendants HIGINIO CASTILLO and MICHAEL NUNEZ-RODRIGUEZ

were leaders of the CASTILLO DRUG SMUGGLING ORGANIZATION (CDSO), which

smuggled heroin from the Dominican Republic to the United States for distribution in Philadelphia

and elsewhere.

3.      Members of the CDSO in Philadelphia recruited individuals to act as

couriers, who would smuggle packets of heroin into the United States inside their bodies, either by

swallowing the packets or by inserting the packets into a body cavity.   Once a courier was

recruited, the CDSO made the travel arrangements for the courier to travel to the Dominican

Republic, including paying for and arranging to obtain any necessary identification documents,

booking for and paying for the flight, and transporting the courier to the airport.

4.      On behalf of the CDSO, "Jay," also known as "Jeff," a person known to the

grand jury, the source of supply for the CDSO, obtained kilogram quantities of heroin in the

Dominican Republic.

5.      The CDSO paid for the travel, lodging, food and other expenses of the courier in the Dominican Republic.

6.      In the Dominican Republic, "Jay" provided the courier with pellets of heroin to into their bodies for smuggling into the United States.

7.      The CDSO arranged for a member of the CDSO to pick up the courier when the courier returned to the United States after clearing customs and border protection, and transport the courier to an apartment controlled by the CDSO to expel the heroin.   The CDSO then packaged the heroin for sale and distributed it in Philadelphia and elsewhere.

8.      The CDSO enforced its hold on couriers and prevented theft of its product through threats and intimidation.

**OVERT ACTS**

In furtherance of the conspiracy, and to accomplish its objects, defendants HIGINIO CASTILLO, MICHAEL NUNEZ-RODRIGUEZ, PHILIP OSLEY, YELTSIN GENAO, KELVIN PEREZ, JULIO GABRIEL PEREZ-MARTINEZ, and JOSE EDDY PADILLA-CABAN, committed the following overt acts, among others, in the Eastern District of Pennsylvania, and elsewhere:

**A.  PHILIP OSLEY and M.S. Smuggled Heroin in June 2011 on Behalf of the CDSO**

1.      In or about May 2011, defendant PHILIP OSLEY recruited M.S., a person known to the grand jury and charged elsewhere, to smuggle heroin on behalf of the CDSO.

2.      On or about May 20, 2011, defendant MICHAEL NUNEZ-RODRIGUEZ took M.S. to obtain his passport at the United States Customs House in Philadelphia, and provided

3

him with $200 to pay for the passport fees and a false travel itinerary to justify obtaining an expedited passport.

3.      On or about June 9, 2011, defendant NUNEZ-RODRIGUEZ picked up defendant PHILIP OSLEY and M.S. at defendant OSLEY's apartment in Philadelphia, and transported them to the Philadelphia International Airport for the flight.

On or about June 13, 2011:

4.       "Jay" provided each of the couriers with more than 50 pellets of heroin to swallow.   Each pellet contained approximately 10 grams of heroin, for a combined weight of more than a kilogram of heroin.   Defendant PHILIP OSLEY and M.S. swallowed the pellets.

5.      Defendant MICHAEL NUNEZ-RODRIGUEZ picked up defendant PHILIP OSLEY and M.S. at the Philadelphia International Airport and drove them to an apartment provided by the CDSO, where they stayed for approximately three days until they had expelled the heroin pellets.

6.      Defendants MICHAEL NUNEZ-RODRIGUEZ and KELVIN PEREZ were at the apartment while the couriers expelled the heroin.

7.      Defendant PHILIP OSLEY was paid by defendant MICHAEL NUNEZ-RODRIGUEZ for smuggling the heroin.

### B.  HIGINIO CASTILLO Recruited Two Couriers to Smuggle Heroin from the Dominican Republic in June 2011

On or about June 20, 2011:

8.      Defendant HIGINIO CASTILLO recruited R.J. and R.R., persons known to the grand jury and charged elsewhere, by offering to provide them a vacation in the Dominican Republic, plus money, for smuggling heroin.

4

9.     Defendant MICHAEL NUNEZ-RODRIGUEZ transported R.J. and provided him funds to obtain a copy of his birth certificate and a Pennsylvania identification card, in order that R.J. could apply for a United States passport.

10.     On or about June 30, 2011, defendant MICHAEL NUNEZ-RODRIGUEZ took R.J. and R.R. to the United States Customs House in Philadelphia and provided them each with $195 to obtain United States passports on an expedited basis.

On or about July 3, 2011:

11.     R.J. and R.R. traveled from Philadelphia to Punta Cana, Dominican Republic, where they were met by "Jay," a member of the CDSO.

12.     "Jay" drove R.J. and R.R. around the area for a short time, and then returned to the airport to pick up defendant HIGINIO CASTILLO, a woman and a child.

13.     On or about July 5, 2011, "Jay" provided R.J. with 47 pellets of heroin and provided R.R with 50 pellets of heroin to swallow prior to their return flight to the United States.

## C.  YELTSIN GENAO and S.R. Smuggled Heroin in August 2011 on Behalf of the CDSO

14.     On or about August 5, 2011, defendant YELTSIN GENAO recruited S.R., known to the grand jury and charged elsewhere, to smuggle controlled substances on behalf of the CDSO, promising S.R. that S.R. would be paid a fee for smuggling drugs into the United States.

On or about August 9, 2011:

15.     After S.R. agreed to participate in the drug smuggling, defendant YELTSIN GENAO introduced S.R. to defendant HIGINIO CASTILLO.

16.     Defendant HIGINIO CASTILLO paid for S.R. to obtain an expedited United States passport.

17.     On or about August 11, 2011, defendant YELTSIN GENAO departed from the Philadelphia International Airport and flew to Punta Cana, in the Dominican Republic, where he was met by CDSO member "Jay."

On or about August 12, 2011:

18.     Defendant MICHAEL NUNEZ-RODRIGUEZ drove S.R. to the Philadelphia International Airport, where he boarded a flight to Punta Cana, Dominican Republic.

19.     S.R. joined defendant YELTSIN GENAO at a hotel in La Romana, Dominican Republic, paid for by "Jay" on behalf of the CDSO.

On or about August 17, 2011:

20.     "Jay" gave defendant YELTSIN GENAO and S.R. heroin pellets to ingest.

21.     Defendant YELTSIN GENAO ingested the heroin pellets and traveled from the Dominican Republic to the Philadelphia International Airport, clearing United States customs without detection.

22.     Defendant YELTSIN GENAO then went to an apartment in Camden, NJ, where he stayed for several days to expel the pellets he had swallowed.

23.     On or about August 20, 2011, defendant YELTSIN GENAO provided the expelled pellets to defendants MICHAEL NUNEZ-RODRIGUEZ and HIGINIO CASTILLO for distribution by the CDSO.

### D.  Members of the CDSO Kidnapped S.R. and Discharged a Firearm During the Kidnapping, Because S.R. Did Not Turn the Smuggled Heroin Over to the CDSO

24.     On or about August 18, 2011, S.R. departed the Dominican Republic after swallowing approximately 52 pellets of heroin, and flew to Philadelphia, PA.   S.R. was arrested at the airport and the heroin was confiscated by federal agents.   S.R. was released on bail on

6

August 24, 2011.

On or about August 24, 2011:

25.     Defendants YELTSIN GENAO, MICHAEL NUNEZ-RODRIGUEZ and KELVIN PEREZ drove from Camden, NJ to Philadelphia, PA, to locate S.R., whom they suspected of having stolen the heroin he attempted to smuggle into the United States.

26.     Upon locating S.R., defendants YELTSIN GENAO, MICHAEL NUNEZ-RODRIGUEZ and KELVIN PEREZ told him to get into the vehicle, and drove him to a residence on 19th Street in Philadelphia where they were joined by defendant HIGINIO CASTILLO and another person, unknown to the grand jury (Person #1).

27.     At the residence, defendants HIGINIO CASTILLO, YELTSIN GENAO, MICHAEL NUNEZ-RODRIGUEZ, and KELVIN PEREZ and Person #1 interrogated S.R. about the heroin that he had transported.

28.     Defendant HIGINIO CASTILLO tied up S.R, binding him at his hands and feet, and moved him into another room within the residence.

29.     While S.R. was tied up, the defendants required S.R. to speak to "Jay" in the Dominican Republic using a cellular telephone.

30.     "Jay" accused S.R. of stealing the heroin that S.R. had smuggled into the United States, and told S.R. that S.R. would pay for the heroin with his life.

31.     Person #1 interrogated S.R., struck S.R., and discharged a firearm in proximity to S.R., in an attempt to obtain information regarding the heroin.

**E.  M.S., L.S. and D.H. Traveled to the Dominican Republic in September 2011 to Smuggle Heroin on Behalf of the CDSO**

32.     In or about September 2011, M.S. recruited D.H., a person known to the

7

grand jury, to smuggle heroin for the CDSO.

33.     In or about September 2011, defendant HIGINIO CASTILLO recruited L.S. a person known to the grand jury and charged elsewhere, to smuggle heroin for the CDSO.

On or about September 19, 2011:

34.     Defendant HIGINIO CASTILLO drove M.S. from Philadelphia, PA to the Newark Liberty International Airport in Newark, N.J., in order for M.S. to fly to Santo Domingo, Dominican Republic.

35.     "Jay" arranged for M.S. to stay at a hotel in the Dominican Republic at the expense of the CDSO and instructed M.S. to charge his expenses to the room.

On or about September 25, 2011:

36.     Defendant HIGINIO CASTILLO drove both L.S. and D.H. from Philadelphia to Newark Liberty International Airport for their departing flight to the Dominican Republic.

37.     L.S. and D.H. met with "Jay" in the Dominican Republic.

38.     "Jay" arranged for lodging for L.S. and D.H., at the expense of the CDSO.

On or about September 28, 2011:

39.     "Jay" provided M.S. with pellets of heroin to swallow.

40.     M.S. flew back to Newark, carrying approximately 460 grams of heroin in his body.

On or about October 2, 2011:

41.     "Jay" told D.H. that M.S. had been arrested upon his return to the United States.

42.     "Jay" told D.H. that instead of smuggling drugs on this trip, D.H. would

"owe" the CDSO a smuggling trip in the future, because the CDSO had paid for D.H.'s expenses.

On or about October 3, 2011:

43.    "Jay" provided L.S. with drugs for internal insertion.

44.    "Jay" directed L.S. to contact defendant HIGINIO CASTILLO upon returning to the United States, where he would pay L.S. $2,500 upon receipt of the smuggled substance.

45.    L.S. traveled to the United States and arrived at Newark Liberty International Airport in Newark, N.J, carrying approximately 225 grams of heroin in a body cavity.

     **F.  Defendants JULIO GABRIEL PEREZ-MARTINEZ and JOSE EDDY PADILLA-CABAN and Traveled from the Dominican Republic in March 2012 to Smuggle Heroin on Behalf of the CDSO**

46.    On a date unknown to the grand jury, but by at least March 2012, "Jay" recruited defendants JULIO GABRIEL PEREZ-MARTINEZ and JOSE EDDY PADILLA-CABAN to smuggle controlled substances into the United States on behalf of the CDSO.

On or about March 14, 2012:

47.    "Jay" provided defendants JULIO GABRIEL PEREZ-MARTINEZ and JOSE EDDY PADILLA-CABAN with pellets of heroin, containing approximately 10 grams of heroin in each pellet, for them to smuggle inside their bodies.

48.    Defendant JULIO GABRIEL PEREZ-MARTINEZ successfully smuggled 16 pellets of heroin through the Customs and Border inspection site at JFK International Airport.

49.    Defendant JOSE EDDY PADILLA-CABAN successfully smuggled 16 pellets of heroin through the Customs and Border inspection site at JFK International Airport, in

the Eastern District of New York.

    50. Defendant MICHAEL NUNEZ-RODRIGUEZ transported defendants

JULIO GABRIEL PEREZ-MARTINEZ and JOSE EDDY PADILLA-CABAN from New York to

a residence at 19th Street, in Philadelphia to expel the heroin pellets.

    51. Defendants JULIO GABRIEL PEREZ-MARTINEZ and JOSE EDDY

PADILLA-CABAN provided their expelled pellets to defendant MICHAEL

NUNEZ-RODRIGUEZ for distribution.   The total weight of heroin expelled exceeded 500

grams.

    All in violation of Title 21, United States Code, Section 963.

## COUNT TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about August 17, 2011, in Philadelphia, in the Eastern District of Pennsylvania, defendants

**HIGINIO CASTILLO,**
**a/k/a "Gordo,"**
**a/k/a "Gordito,"**
**a/k/a "Little Man,"**
**a/k/a "Piting,"**
**a/k/a "Donald,"**
**MICHAEL NUNEZ-RODRIGUEZ,**
**a/k/a "Michael Nunez,"**
**a/k/a "Mike,"**
**YELTSIN GENAO,**
**a/k/a "Jayson," and**
**KELVIN PEREZ**

knowingly and intentionally imported, and aided and abetted the importation of, 100 grams or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, into the United States from a place outside the United States, that is, the Dominican Republic.

In violation of Title 21, United States Code, Sections 952(a) and 960(a), (b)(2)(A), and Title 18, United States Code, Section 2.

11

## COUNT THREE

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about August 18, 2011, in Philadelphia, in the Eastern District of

Pennsylvania, defendants

**HIGINIO CASTILLO,**
**a/k/a "Gordo,"**
**a/k/a "Gordito,"**
**a/k/a "Little Man,"**
**a/k/a "Piting,"**
**a/k/a "Donald,"**
**MICHAEL NUNEZ-RODRIGUEZ,**
**a/k/a "Michael Nunez,"**
**a/k/a "Mike,"**
**YELTSIN GENAO,**
**a/k/a "Jayson," and**
**KELVIN PEREZ**

knowingly and intentionally imported, and aided and abetted the importation of, 100 grams or

more, that is, approximately 576 grams, of a mixture and substance containing a detectable amount

of heroin, a Schedule I controlled substance, into the United States from a place outside the United

States, that is, the Dominican Republic.

In violation of Title 21, United States Code, Sections 952(a), 960(a), (b)(2)(A), and

Title 18, United States Code, Section 2.

12

## COUNT FOUR

**THE GRAND JURY FURTHER CHARGES THAT:**

1.       From at least November 2010 through March 16, 2012, in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendants

**HIGINIO CASTILLO,**
**a/k/a "Gordo,"**
**a/k/a "Gordito,"**
**a/k/a "Little Man,"**
**a/k/a "Piting,"**
**a/k/a "Donald,"**
**MICHAEL NUNEZ-RODRIGUEZ,**
**a/k/a "Michael Nunez,"**
**a/k/a "Mike,"**
**YELTSIN GENAO,**
**a/k/a "Jayson,"**
**KELVIN PEREZ,**
**JULIO GABRIEL PEREZ-MARTINEZ, and**
**JOSE EDDY PADILLA-CABAN**

conspired and agreed, together and with others known and unknown to the grand jury, to knowingly and intentionally distribute 1 kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A).

## MANNER AND MEANS

It was part of the conspiracy that:

2.       Defendants HIGINIO CASTILLO and MICHAEL NUNEZ-RODRIGUEZ were leaders of the CASTILLO DRUG SMUGGLING ORGANIZATION (CDSO), which smuggled heroin from the Dominican Republic to the United States for distribution in Philadelphia and elsewhere.

3.       Members of the CDSO in Philadelphia recruited individuals to act as

couriers, who would smuggle packets of heroin into the United States inside their bodies, either by swallowing the packets or by inserting the packets into a body cavity.   Once a courier was recruited, the CDSO made the travel arrangements for the courier to travel to the Dominican Republic, including paying for and arranging to obtain any necessary identification documents, booking for and paying for the flight, and transporting the courier to the airport.

4.      On behalf of the CDSO, "Jay," also known as "Jeff," known to the grand jury, the source of supply for the CDSO, obtained kilogram quantities of heroin in the Dominican Republic.

5.      The CDSO paid for the travel, lodging, food and other expenses of the courier in the Dominican Republic.

6.      In the Dominican Republic, "Jay" provided the courier with pellets of heroin to into their bodies for smuggling into the United States.

7.      The CDSO arranged for a member of the CDSO to pick up the courier when the courier returned to the United States after clearing customs and border protection, and transport the courier to an apartment controlled by the CDSO to expel the heroin.   The CDSO then packaged the heroin for sale and distributed it in Philadelphia and elsewhere.

8.      The CDSO enforced its hold on couriers and prevented theft of its product through threats and intimidation.

**<u>OVERT ACTS</u>**

In furtherance of the conspiracy, and to accomplish its objects, defendants HIGINIO CASTILLO, MICHAEL NUNEZ-RODRIGUEZ, PHILIP OSLEY, YELTSIN GENAO, KELVIN PEREZ, JULIO GABRIEL PEREZ-MARTINEZ, and JOSE EDDY PADILLA-CABAN, committed the following overt acts, among others, in the Eastern District of

14

Pennsylvania, and elsewhere:

**A.  PHILIP OSLEY and M.S. Smuggled Heroin in June 2011 on Behalf of the CDSO**

1.      In or about May 2011, defendant PHILIP OSLEY recruited M.S., a person known to the grand jury and charged elsewhere, to smuggle heroin on behalf of the CDSO.

2.      On or about May 20, 2011, defendant MICHAEL NUNEZ-RODRIGUEZ took M.S. to obtain his passport at the United States Customs House in Philadelphia, and provided him with $200 to pay for the passport fees and a false travel itinerary to justify obtaining an expedited passport.

3.      On or about June 9, 2011, defendant MICHAEL NUNEZ-RODRIGUEZ picked up defendant PHILIP OSLEY and M.S. at defendant OSLEY's apartment in Philadelphia, and transported them to the Philadelphia International Airport for the flight.

On or about June 13, 2011:

4.      "Jay" a/k/a "Jeff" provided each of the couriers with more than 50 pellets of heroin to swallow.   Each pellet contained approximately 10 grams of heroin, for a combined weight of more than a kilogram of heroin.   Defendant PHILIP OSLEY and M.S. swallowed the pellets.

5.      Defendant MICHAEL NUNEZ-RODRIGUEZ picked up defendant PHILIP OSLEY and M.S. at the Philadelphia International Airport and drove them to an apartment provided by the CDSO, where they stayed for approximately three days until they had expelled the heroin pellets.

6.      Defendants MICHAEL NUNEZ-RODRIGUEZ and KELVIN PEREZ were at the apartment while the couriers expelled the heroin.

15

7.      Defendant PHILIP OSLEY was paid by defendant MICHAEL NUNEZ-RODRIGUEZ for smuggling the heroin.

### B.  HIGINIO CASTILLO Recruited Two Couriers to Smuggle Heroin from the Dominican Republic in June 2011

On or about June 20, 2011:

8.      Defendant HIGINIO CASTILLO recruited R.J. and R.R., persons known to the grand jury and charged elsewhere, by offering to provide them a vacation in the Dominican Republic, plus money, for smuggling heroin.

9.      Defendant MICHAEL NUNEZ-RODRIGUEZ transported R.J. and provided him funds to obtain a copy of his birth certificate and a Pennsylvania identification card, in order that R.J. could apply for a United States passport.

10.     On or about June 30, 2011, defendant MICHAEL NUNEZ-RODRIGUEZ took R.J. and R.R. to the United States Customs House in Philadelphia and provided them each with $195 to obtain United States passports on an expedited basis.

On or about July 3, 2011:

11.     R.J. and R.R. traveled from Philadelphia to Punta Cana, Dominican Republic, where they were met by "Jay," a member of the CDSO.

12.     "Jay" drove R.J. and R.R. around the area for a short time, and then returned to the airport to pick up defendant HIGINIO CASTILLO, a woman and a child.

13.     On or about July 5, 2011, "Jay" provided R.J. with 47 pellets of heroin and provided R.R with 50 pellets of heroin to swallow prior to their return flight to the United States.

### C.  YELTSIN GENAO and S.R. Smuggled Heroin in August 2011 on Behalf of the CDSO

14.     On or about August 5, 2011, Defendant YELTSIN GENAO recruited S.R.,

16

known to the grand jury and charged elsewhere, to smuggle controlled substances on behalf of the

CDSO, promising S.R. that S.R. would be paid a fee for smuggling drugs into the United States.

On or about August 9, 2011:

15. After S.R. agreed to participate in the drug smuggling, defendant YELTSIN

GENAO introduced S.R. to defendant HIGINIO CASTILLO.

16. Defendant HIGINIO CASTILLO paid for S.R. to obtain an expedited

United States passport.

17. On or about August 11, 2011, defendant YELTSIN GENAO departed from

the Philadelphia International Airport and flew to Punta Cana, in the Dominican Republic, where

he was met by a CDSO member known as "Jay."

On or about August 12, 2011:

18. Defendant MICHAEL NUNEZ-RODRIGUEZ drove S.R. to the

Philadelphia International Airport, where he boarded a flight to Punta Cana, Dominican Republic.

19. S.R. joined defendant YELTSIN GENAO at a hotel in La Romana,

Dominican Republic, paid for by "Jay" on behalf of the CDSO.

On or about August 17, 2011:

20. "Jay" gave defendant YELTSIN GENAO and S.R. heroin pellets to ingest.

21. Defendant YELTSIN GENAO ingested the heroin pellets and traveled from

the Dominican Republic to the Philadelphia International Airport, clearing United States customs

without detection.

22. Defendant YELTSIN GENAO then went to an apartment in Camden, NJ,

where he stayed for several days to expel the pellets he had swallowed.

23. On or about August 20, 2011, defendant YELTSIN GENAO provided the

expelled pellets to defendants MICHAEL NUNEZ-RODRIGUEZ and HIGINIO CASTILLO for distribution by the CDSO.

> **D. Members of the CDSO Kidnapped S.R. and Discharged a Firearm During the Kidnapping, Because S.R. Did Not Turn the Smuggled Heroin Over to the CDSO**

24.     On or about August 18, 2011, S.R. departed the Dominican Republic after swallowing approximately 52 pellets of heroin, and flew to Philadelphia, PA.   S.R. was arrested at the airport and the heroin was confiscated by federal agents.   S.R. was released on bail on August 24, 2011.

On or about August 24, 2011:

25.     Defendants YELTSIN GENAO, MICHAEL NUNEZ-RODRIGUEZ and KELVIN PEREZ drove from Camden, NJ to Philadelphia, PA, to locate S.R., whom they suspected of having stolen the heroin he attempted to smuggle into the United States.

26.     Upon locating S.R., defendants YELTSIN GENAO, MICHAEL NUNEZ-RODRIGUEZ and KELVIN PEREZ told him to get into the vehicle, and drove him to a residence on 19th Street in Philadelphia where they were joined by defendant HIGINIO CASTILLO and another person, unknown to the grand jury (Person #1).

27.     At the residence, defendants HIGINIO CASTILLO, YELTSIN GENAO, MICHAEL NUNEZ-RODRIGUEZ, and KELVIN PEREZ and Person #1 interrogated S.R. about the heroin that he had transported.

28.     Defendant HIGINIO CASTILLO tied up S.R, binding him at his hands and feet, and moved him into another room within the residence.

29.     While S.R. was tied up, the defendants required S.R. to speak to "Jay" in the Dominican Republic using a cellular telephone.

18

30.     "Jay" accused S.R. of stealing the heroin that S.R. had smuggled into the United States, and told S.R. that S.R. would pay for the heroin with his life.

31.     Person #1 interrogated S.R., struck S.R., and discharged a firearm in proximity to S.R., in an attempt to obtain information regarding the heroin.

**E.   M.S., L.S. and D.H. Traveled to the Dominican Republic in September 2011 to Smuggle Heroin on Behalf of the CDSO**

32.     In or about September 2011, M.S. recruited D.H., a person known to the grand jury, to smuggle heroin for the CDSO.

33.     In or about September 2011, defendant HIGINIO CASTILLO recruited L.S. a person known to the grand jury and charged elsewhere, to smuggle heroin for the CDSO.

On or about September 19, 2011:

34.     Defendant HIGINIO CASTILLO drove M.S. from Philadelphia, PA to the Newark Liberty International Airport in Newark, N.J., in order for M.S. to fly to Santo Domingo, Dominican Republic.

35.     "Jay" arranged for M.S. to stay at a hotel in the Dominican Republic at the expense of the CDSO and instructed M.S. to charge his expenses to the room.

On or about September 25, 2011:

36.     Defendant HIGINIO CASTILLO drove both L.S. and D.H. from Philadelphia to Newark Liberty International Airport for their departing flight to the Dominican Republic.

37.     L.S. and D.H. met with "Jay" in the Dominican Republic.

38.     "Jay" arranged for lodging for L.S. and D.H., at the expense of the CDSO.

On or about September 28, 2011:

19

39.     "Jay" provided M.S. with pellets of heroin to swallow.

40.     M.S. flew back to Newark, N.J., carrying approximately 460 grams of heroin in his body.

On or about October 2, 2011:

41.     "Jay" told D.H. that M.S. had been arrested upon his return to the United States.

42.     "Jay" told D.H. that instead of smuggling drugs on this trip, D.H. would "owe" the CDSO a smuggling trip in the future, because the CDSO had paid for D.H.'s expenses.

On or about October 3, 2011:

43.     "Jay" provided L.S. with drugs for internal insertion.

44.     "Jay" directed L.S. to contact defendant HIGINIO CASTILLO upon returning to the United States, where he would pay L.S. $2,500 upon receipt of the smuggled substance.

45.     L.S. traveled to the United States and arrived at Newark Liberty International Airport in Newark, N.J., carrying approximately 225 grams of heroin in a body cavity.

### F. Defendants JULIO GABRIEL PEREZ-MARTINEZ and JOSE EDDY PADILLA-CABAN and Traveled from the Dominican Republic in March 2012 to Smuggle Heroin on Behalf of the CDSO

46.     On a date unknown to the grand jury, but by at least March 2012, "Jay" recruited defendant JULIO GABRIEL PEREZ-MARTINEZ and JOSE EDDY PADILLA-CABAN to smuggle controlled substances into the United States on behalf of the CDSO.

On or about March 14, 2012:

20

47.     "Jay" provided defendants JULIO GABRIEL PEREZ-MARTINEZ and JOSE EDDY PADILLA-CABAN with pellets of heroin, containing approximately 10 grams of heroin in each pellet, for them to smuggle inside their bodies.

48.     Defendant JULIO GABRIEL PEREZ-MARTINEZ successfully smuggled 16 pellets of heroin through the Customs and Border inspection site at JFK International Airport, in the Eastern District of New York.

49.     Defendant JOSE EDDY PADILLA-CABAN successfully smuggled 16 pellets of heroin through the Customs and Border inspection site at JFK International Airport, in the Eastern District of New York.

50.     Defendant MICHAEL NUNEZ-RODRIGUEZ transported defendants JULIO GABRIEL PEREZ-MARTINEZ and JOSE EDDY PADILLA-CABAN from New York to a residence at 19th Street, in Philadelphia to expel the heroin pellets.

51.     Defendants JULIO GABRIEL PEREZ-MARTINEZ and JOSE EDDY PADILLA-CABAN provided their expelled pellets to defendant MICHAEL NUNEZ-RODRIGUEZ for distribution.   The total weight of heroin expelled exceeded 500 grams.

All in violation of Title 21, United States Code, Section 846.

## <u>COUNT FIVE</u>

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about August 17, 2011, in Philadelphia, in the Eastern District of

Pennsylvania, and elsewhere, defendants

**HIGINIO CASTILLO,**
**a/k/a "Gordo,"**
**a/k/a "Gordito,"**
**a/k/a "Little Man,"**
**a/k/a "Piting,"**
**a/k/a "Donald,"**
**MICHAEL NUNEZ-RODRIGUEZ,**
**a/k/a "Michael Nunez,"**
**a/k/a "Mike,"**
**YELTSIN GENAO,**
**a/k/a "Jayson," and**
**KELVIN PEREZ**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the

possession with intent to distribute of, 100 grams or more of a mixture and substance containing a

detectable amount of heroin, a Schedule I controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B)(i), and

Title 18, United States Code, Section 2.

22

## COUNT SIX

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about August 18, 2011, in Philadelphia, in the Eastern District of

Pennsylvania, and elsewhere, defendants

**HIGINIO CASTILLO,**
**a/k/a "Gordo,"**
**a/k/a "Gordito,"**
**a/k/a "Little Man,"**
**a/k/a "Piting,"**
**a/k/a "Donald,"**
**MICHAEL NUNEZ-RODRIGUEZ,**
**a/k/a "Michael Nunez,"**
**a/k/a "Mike,"**
**YELTSIN GENAO,**
**a/k/a "Jayson," and**
**KELVIN PEREZ**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the

possession with intent to distribute of, 100 grams or more, that is, approximately 576 grams, of a

mixture and substance containing a detectable amount of heroin, a Schedule I controlled

substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B), and Title

18, United States Code, Section 2.

## COUNT SEVEN

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.      From on or about August 24, 2012 to on or about August 25, 2012, in

Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendants

**HIGINIO CASTILLO,**
**a/k/a "Gordo,"**
**a/k/a "Gordito,"**
**a/k/a "Little Man,"**
**a/k/a "Piting,"**
**a/k/a "Donald,"**
**MICHAEL NUNEZ-RODRIGUEZ,**
**a/k/a "Michael Nunez,"**
**a/k/a "Mike,"**
**YELTSIN GENAO,**
**a/k/a "Jayson," and**
**KELVIN PEREZ**

conspired and agreed, together and with others known and unknown to the grand jury, to

knowingly and unlawfully seize, confine, kidnap, abduct, carry away, and hold S.R., a person

known to the grand jury, for ransom, reward and otherwise, that is, to threaten and coerce him to

remit heroin that had been provided to him in the Dominican Republic, and traveled in interstate

commerce and used means, facilities and instrumentalities of interstate and foreign commerce in

furtherance of the commission of the offense.

## MANNER AND MEANS

      It was part of the conspiracy that:

      2.      Defendants HIGINIO CASTILLO and MICHAEL NUNEZ-RODRIGUEZ

were leaders of the CASTILLO DRUG SMUGGLING ORGANIZATION (CDSO), which

smuggled heroin from the Dominican Republic to the United States for distribution in Philadelphia

and elsewhere.   Defendants YELTSIN GENAO and KELVIN PEREZ were also members of the

CDSO.

          3.      When defendants HIGINIO CASTILLO, MICHAEL NUNEZ-RODRIGUEZ, YELTSIN GENAO and KELVIN PEREZ suspected that S.R. had stolen the heroin that S.R. had smuggled into the United States for the CDSO, they lured him to a private location in Philadelphia, confined him there, threatened him with physical harm, and brandished and discharged a firearm, in an attempt to locate the missing heroin.

## **OVERT ACTS**

          In furtherance of the conspiracy, and to accomplish its object, defendants HIGINIO CASTILLO, MICHAEL NUNEZ-RODRIGUEZ, YELTSIN GENAO and KELVIN PEREZ committed the following overt acts, among others, in the Eastern District of Pennsylvania and elsewhere:

          On or about August 24, 2011:

          1.      Defendants YELTSIN GENAO, MICHAEL NUNEZ-RODRIGUEZ and KELVIN PEREZ drove from Camden, NJ to Philadelphia, PA, to locate S.R.

          2.      Upon locating S.R., defendants YELTSIN GENAO, MICHAEL NUNEZ-RODRIGUEZ and KELVIN PEREZ told S.R. to get into the vehicle, and drove S.R. to a residence on 19th Street in Philadelphia where they were joined by defendant HIGINIO CASTILLO and another person, unknown to the grand jury (Person #1).

          3.      At the residence, defendants HIGINIO CASTILLO, YELTSIN GENAO, MICHAEL NUNEZ-RODRIGUEZ, and KELVIN PEREZ, along with Person #1, interrogated S.R. about the heroin that he had transported.

          4.      Defendant HIGINIO CASTILLO tied up S.R, binding him at his hands and feet, and moved him into another room within the residence.

5.      Defendants HIGINIO CASTILLO and MICHAEL NUNEZ-RODRIGUEZ spoke by telephone with "Jay," a person known to the grand jury, in the Dominican Republic to receive guidance and instruction regarding the interrogation of S.R.

6.      While S.R. was tied up, the defendants required S.R. to speak to "Jay" in the Dominican Republic using a cellular telephone.

7.      "Jay" accused S.R. of stealing the heroin that he had smuggled into the United States, and told S.R. that he would pay for the heroin with his life.

8.      Person #1 interrogated S.R., struck S.R., and discharged a firearm in proximity to S.R., in an attempt to obtain information regarding the heroin.

All in violation of Title 18, United States Code, Section 1201(c).

## COUNT EIGHT

**THE GRAND JURY FURTHER CHARGES THAT:**

From on or about the August 24, 2011 to on or about August 25, 2011, in

Philadelphia, the Eastern District of Pennsylvania, defendants

**HIGINIO CASTILLO,**
**a/k/a "Gordo,"**
**a/k/a "Gordito,"**
**a/k/a "Little Man,"**
**a/k/a "Piting,"**
**a/k/a "Donald,"**
**MICHAEL NUNEZ-RODRIGUEZ,**
**a/k/a "Michael Nunez,"**
**a/k/a "Mike,"**
**YELTSIN GENAO,**
**a/k/a "Jayson," and**
**KELVIN PEREZ,**

knowingly and unlawfully seized, confined, kidnapped, abducted, carried away and held, and

aided and abetted the unlawful seizure, confinement, kidnapping, abduction, carrying away and

holding of S.R., a person known to the grand jury, for ransom, reward and otherwise, that is, to

threaten and coerce him to remit heroin that had been provided to him in the Dominican Republic,

and traveled in interstate commerce from New Jersey to Pennsylvania in committing and in

furtherance of the offense, and used means, facilities, and instrumentalities of interstate and

foreign commerce, that is, cellular telephone calls amongst themselves and to the Dominican

Republic, in committing and in furtherance of the commission of the offense.

In violation of Title 18, United States Code, Sections 1201 and 2.

27

## COUNT NINE

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about August 25, 2011, in Philadelphia, in the Eastern District of

Pennsylvania, defendants

**HIGINIO CASTILLO,**
**a/k/a "Gordo,"**
**a/k/a "Gordito,"**
**a/k/a "Little Man,"**
**a/k/a "Piting,"**
**a/k/a "Donald,"**
**MICHAEL NUNEZ-RODRIGUEZ,**
**a/k/a "Michael Nunez,"**
**a/k/a "Mike,"**
**YELTSIN GENAO,**
**a/k/a "Jayson," and**
**KELVIN PEREZ**

knowingly used and carried a firearm, and aided and abetted the use and carrying of, a firearm, that

is, a handgun during and in relation to a crime of violence for which the defendants may be

prosecuted in a court of the United States, that is, kidnapping, in violation of Title 18, United

States Code, Section 1201, and during and in relation to a drug trafficking crime for which the

defendants may be prosecuted in a court of the United States, that is, conspiracy to distribute a

controlled substance in violation of Title 21, United States Code, Section 846.

In violation of Title 18, United States Code, Sections 924(c)(1) and 2.

## COUNT TEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about March 14, 2012, in Philadelphia, in the Eastern District of

Pennsylvania, defendants

**HIGINIO CASTILLO,**
**a/k/a "Gordo,"**
**a/k/a "Gordito,"**
**a/k/a "Little Man,"**
**a/k/a "Piting,"**
**a/k/a "Donald,"**
**MICHAEL NUNEZ-RODRIGUEZ,**
**a/k/a "Michael Nunez,"**
**a/k/a "Mike,"**
**JULIO GABRIEL PEREZ-MARTINEZ, and**
**JOSE EDDY PADILLA-CABAN**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the

possession with intent to distribute of, 100 grams or more, that is, approximately 460 grams, of a

mixture and substance containing a detectable amount of heroin, a Schedule I controlled

substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B), and Title

18, United States Code, Section 2.

29

## COUNT ELEVEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about March 14, 2012, in Philadelphia, in the Eastern District of

Pennsylvania, defendants

**HIGINIO CASTILLO,**
**a/k/a "Gordo,"**
**a/k/a "Gordito,"**
**a/k/a "Little Man,"**
**a/k/a "Piting,"**
**a/k/a "Donald,"**
**MICHAEL NUNEZ-RODRIGUEZ,**
**a/k/a "Michael Nunez,"**
**a/k/a "Mike,"**
**JULIO GABRIEL PEREZ-MARTINEZ, and**
**JOSE EDDY PADILLA-CABAN**

knowingly and intentionally imported, and aided and abetted the importation of, 100 grams or

more, that is, approximately 460 grams, of a mixture and substance containing a detectable amount

of heroin, a Schedule I controlled substance, into the United States from a place outside the United

States, that is, the Dominican Republic.

In violation of Title 21, United States Code, Sections 952(a) and 960(a), (b)(2)(A),

and Title 18, United States Code, Section 2.

## NOTICE OF FORFEITURE
### (21 U.S.C. § 853)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.  As a result of the offenses alleged in Counts 1, 2, 3, 4, 5, 6, 10 and/or 11 of this Superseding Indictment, defendants

**HIGINIO CASTILLO**
**a/k/a "Gordo,"**
**a/k/a "Gordito,"**
**a/k/a "Little Man,"**
**a/k/a "Piting,"**
**a/k/a "Donald,"**
**MICHAEL NUNEZ-RODRIGUEZ,**
**a/k/a "Michael Nunez,"**
**a/k/a "Mike,"**
**PHILIP OSLEY,**
**YELTSIN GENAO,**
**a/k/a "Jayson,"**
**KELVIN PEREZ,**
**JULIO GABRIEL PEREZ-MARTINEZ, and**
**JOSE EDDY PADILLA-CABAN,**

shall forfeit to the United States any and all property constituting, or derived from, any proceeds the defendants obtained, directly or indirectly, as a result of such offenses; and/or any property used or intended to be used, in any manner or part, to commit, or to facilitate the commission of, any such violations, including but not limited to:

    a.  3645 N 19th Street, Philadelphia, PA   19140;

    b.  a silver 2002 Honda Civic, Vehicle Identification Number

        1HGEM22972L076240, bearing Pennsylvania state registration

        HVD5623

31

.

2.      If any of the property described in paragraph 1, above, as a result of any act or omission of

the defendants –

      (a)      cannot be located upon the exercise of due diligence;

      (b)      has been transferred or sold to, or deposited with, a third party;

      (c)      has been placed beyond the jurisdiction of the Court;

      (d)      has been substantially diminished in value; or

      (e)      has been commingled with other property which cannot be subdivided
             without difficulty;

it is the intention of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of the defendants up to the value of the property described in

paragraph 1.

      All in violation of Title 21, United States Code, Section 853.

## NOTICE OF FORFEITURE

**THE GRAND JURY FURTHER CHARGES THAT:**

As a result of the violation of Title 18, United States Code, Section 924(c), set forth in this Superseding Indictment, defendants

**HIGINIO CASTILLO**
**a/k/a "Gordo,"**
**a/k/a "Gordito,"**
**a/k/a "Little Man,"**
**a/k/a "Piting,"**
**a/k/a "Donald,"**
**MICHAEL NUNEZ-RODRIGUEZ,**
**a/k/a "Michael Nunez,"**
**a/k/a "Mike,"**
**YELTSIN GENAO,**
**a/k/a "Jayson," and**
**KELVIN PEREZ,**

shall forfeit to the United States of America the firearm involved in the commission of such offense, including, but not limited to: a semi-automatic handgun.

All pursuant to Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 924(d).

**A TRUE BILL:**

_____
**FOREPERSON**

_____
**ZANE DAVID MEMEGER**
**UNITED STATES ATTORNEY**

33